MORIAL, Judge.
Susie Willis, wife of/and Edward Black-more appeal from a judgment dismissing their suit against defendant New Orleans Public Service, Inc. (NOPSI) for damages sustained by Mrs. Blackmore in an automobile-bus collision near the intersection of Magazine and Joseph Streets in the City of New Orleans.
On February 17, 1972 Mrs. Blackmore was a fare-paying passenger aboard a NOP-SI bus being operated by Ed Henry Johnson. Mr. Johnson was proceeding in an uptown direction on Magazine Street and stopped at the passenger service stop at the intersection .of Magazine Street and Joseph Street and permitted several passengers to alight. Mr. Johnson pulled away from the stop and proceeded down Magazine Street at approximately 10 mph. Mrs. Blackmore intended to get off the bus at the next stop and after pulling the cord to notify the driver stood up and began moving toward the exit. An automobile being driven by Mr. Merrit Blakeslee passed the bus and came to a complete stop in front of the bus after completing the passing maneuver. The bus driver slammed on his brakes but was unable to avoid running into the rear of the Blakeslee vehicle. Mrs. Blackmore was thrown to the floor of the bus and sustained injuries. Plaintiffs sought damages alleging the negligence of the NOPSI driver and in the alternative sued Blakeslee. Mr. Blakeslee filed a separate suit against NOPSI which was consolidated with this case for trial. Damages were stipulated to prior to trial. Defendant NOPSI denied liability alleging that the negligence of Blakeslee was the sole cause of the accident. The trial judge rendered judgment in favor of plaintiffs in the sum of $3,530.00 against defendant Blakeslee and granted judgment in favor of defendant NOPSI dismissing plaintiffs’ suit against the company. We affirm.
Plaintiffs argue on appeal that the defendant bus driver failed to exercise the high degree of care required of the driver of a common carrier. Specifically, plaintiff contends that the driver was inattentive because he did not hear the blowing of the horn by the driver of the passing vehicle and did not observe the auto’s tail lights going on when Blakeslee applied his brakes. Plaintiffs also contend that the bus driver was negligent in not immediately applying his brakes or decelerating when he became *297 aware of the passing vehicle. Plaintiff points out there were no skid marks found after the accident and also that the weather was dry and clear on the day of the incident.
Defendant admits that it owes a high degree of care to its passengers and the fact that plaintiff was injured and did not reach her destination safely imposed upon the defendant carrier the burden of exculpating itself from negligence. However, defendant argues that it met this burden of proof by presenting evidence rebutting any presumption of negligence on the part of its driver. A review of the record shows that the defendant NOPSI met its burden of proof.
Mrs. Blackmore testified that after she stood up and took a couple of steps she heard a horn honking, the screech of tires, felt the bus wiggle and was then thrown to the floor. She did not see the passing vehicle until after the accident occurred.
Mr. Blakeslee testified that prior to the accident he was traveling at about 20 to 30 mph in an uptown direction on Magazine Street. He stated that he observed the bus in the parking lane, and proceeded to pass around the bus after blowing his horn and flicking his lights. When he was alongside the bus, it began pulling out onto Magazine Street and having spotted an oncoming car, Blakeslee accelerated his vehicle to about 40 mph and blew his horn. He stated that after he completed his pass he noted a car in front of him in the same lane of travel and he brought his car to a dead stop. He estimated that the bus was about twenty feet behind his vehicle when he brought it to a halt.
Johnson, the bus driver testified that after his passengers disembarked at Joseph Street he checked his rear view mirror before pulling out and did not see any cars approaching. Nor did he hear any honking. He first saw the Blakeslee vehicle as it passed the left front wheel of his bus. He stated that Blakeslee was going about 30 mph when he pulled his car in front of the bus and came to a stop about five feet in front of the bus. Johnson said he immediately applied his brakes but did not have time to stop and avoid the collision. He testified that there were no cars in front of the Blakeslee vehicle.
Mrs. Alice Sonca was a passenger on the bus and was seated behind the driver on the front long seat. She testified that as the bus was pulling onto Magazine Street after making a stop a car traveling “awfully fast” pulled out in front of the bus and stopped about four feet in front of the bus. She had not heard a horn blowing. She stated that there was no traffic in front of the Blakeslee vehicle.
Mr. Charles Fontana, also a NOPSI bus driver was standing in front of the bus barn on Magazine Street. He heard a horn blowing and saw the Blakeslee vehicle passing around the bus and stopping dead no more than ten feet in front of the bus. He testified that he looked in front of the car to see what caused the driver to stop so abruptly but saw no traffic at all in front of the vehicle.
The trial judge found that the accident was caused by the negligence of defendant Blakeslee in bringing his vehicle to a sudden stop in front of the bus when it was unsafe to do so and without allowing the bus driver sufficient distance to bring the bus safely to a halt. The court also made the factual determination that there were no vehicles in front of the Blakeslee vehicle causing him to come to a stop. The record clearly supports these findings.
We are aware of the high degree of care required of public carriers to their fare-paying passengers. It is well settled that the mere showing of an injury to a fare-paying passenger on a public conveyance and his failure to reach his destination safely imposes upon the carrier the burden of exculpating itself from negligence Carter v. New Orleans Public Service, Inc., 305 So.2d 481 (La.1974). However, we find that defendant NOPSI has successfully met this burden of proof.
The Supreme Court in Gross v. Teche Lines, 207 La. 354, 21 So.2d 378, 382 (1945) *298 enunciated the duty of the public carrier as follows:
“ * * * A carrier of passengers is liable for the slightest negligence which contributes to an accident that causes injury to a passenger but is not an insurer of the passenger’s safety against negligent acts of third parties and their palpable disregard of the law. The highest degree of care doctrine is not synonymous with a guarantee of the passenger’s safety against any possible injury. Until there is some indication, which would require a vigilant, competent, and experienced driver exercising the highest degree of care to observe the contemplated reckless and unlawful act of another, it is not negligence on his part to fail to do so. To hold otherwise would require the operator of a passenger vehicle to foresee every unexpected and sudden contingency. To place such an obligation on him would require him to speculate with mere possibilities and pure conjecture. *
We are aware that a following motorist who strikes a preceding motorist from the rear is presumed to be negligent. However, the following motorist may escape liability in a rear end collision by establishing that the unpredictable driving of a preceding motorist created a sudden emergency which the following motorist could not reasonably have anticipated. Eubanks v. Brasseal, 310 So.2d 550 (La.1975). We find that Blakeslee created a sudden emergency by unnecessarily bringing his vehicle to a halt within five to ten feet of the moving bus. The bus driver could not have anticipated such reckless conduct on Blakeslee’s part. We conclude that the defendant bus driver acted prudently and reasonably under the circumstances and is not guilty of the slightest negligence. See Walker v. New Orleans Public Service, Inc., 245 So.2d 763 (La.App. 4 Cir. 1971); Alphonse v. New Orleans Public Service, Inc., 138 So.2d 610 (La.App. 4 Cir. 1962).
The judgment of the district court is affirmed.

AFFIRMED.